Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | Criminal Action No. 11-0133 (ES) |
| Plaintiff, | OPINION |
| v. | |
| **MOHAMED ALESSA,** | |
| Defendant. | |

**SALAS, DISTRICT JUDGE**

Before the Court is defendant Mohamed Alessa's ("Defendant") motion for a reduction of sentence brought pursuant to 18 U.S.C. § 3582(c)(1)(A). (D.E. No. 74 ("Motion" or "Mot.")). The United States of America (the "Government") filed an opposition (D.E. No. 79 ("Opp. Br.")), and Defendant filed a reply (D.E. No. 81 ("Reply Br.")). Defendant later filed a supplemental letter in further support of his Motion. (D.E. No. 82 ("Supp. Ltr.")). Having considered the parties' submissions, the Court decides the Motion without oral argument. *See* L. Crim. R. 1.1; L. Civ. R. 78.1(b); *United States v. Styer*, 573 F.3d 151, 154 (3d Cir. 2009); *see also* Fed. R. Crim. P. 43(b)(4). For the following reasons, Defendant's Motion (D.E. No. 74) is **DENIED**.

**I.   BACKGROUND**

In June 2010, Defendant and his co-defendant Carlos Almonte were attempting to fly to Egypt with plans to then head to Somalia and join the terrorist group Al Shabaab when, in connection with a sting operation, they were arrested and charged with conspiracy within the United States to murder individuals outside the United States, in violation of 18 U.S.C. § 956(a)(1). (*See* D.E. No. 74-1 ("Mov. Br.") at 4; *see also* D.E. Nos. 31, 35 & 45). On March 3, 2011,

1

Defendant pled guilty to a violation of 18 U.S.C. § 956(a)(1). (*See* D.E. Nos. 33, 34 & 35). On April 15, 2013, the late Honorable Dickinson R. Debevoise, U.S.D.J., sentenced Defendant to 264 months' (i.e., 22 years') imprisonment, an 8-year variance from the Sentencing Guidelines range of 360 months (i.e., 30 years)-to-life imprisonment. (*See* D.E. Nos. 59, 61 & 71; *see also* D.E. No. 35 at 8). Defendant is currently incarcerated at FCI Marion and is set to be released on May 24, 2028. (*See* Opp. Br. at 7; Supp. Ltr.). Defendant has served approximately 81% of his sentence of incarceration (Supp. Ltr.) and has good time credit of approximately 23 months (Opp. Br. at 7).

Prior to filing his Motion, Defendant submitted a request for compassionate release to the Federal Bureau of Prisons ("BOP") warden, which was denied on May 25, 2023.[1] (D.E. No. 74-2; *see also* Mov. Br. at 1). On June 13, 2024, Defendant filed a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) based on extraordinary and compelling reasons including that he is the only person who can take care of his elderly parents who have health issues, the disparity between his sentence and more recent sentences in similar terrorism-related cases, and other reasons including his young age at the time of the offense, the harsh prison conditions during the COVID-19 pandemic, and his rehabilitation while incarcerated. (*See* Mot.; Mov. Br.; Reply. Br.; *see also* D.E. No. 74-2 through D.E. No. 74-5 (exhibits attached to Defendant's Motion)). On July 12, 2024, the Government filed an opposition (Opp. Br.), and on July 19, 2024, Defendant filed a reply (Reply Br.). On February 19, 2025, Defendant filed a supplemental letter in further support of his Motion. (Supp. Ltr.). The Motion is fully briefed.

## II.   LEGAL STANDARD

"A district court may only modify a sentence imposed 'in limited circumstances.'" *United*

---

[1] The Court notes that although the BOP warden denied Defendant's request for compassionate release on May 25, 2023, Defendant did not receive a copy of this decision until May 30, 2025. (*See* D.E. No. 74-2; *see also* Mov. Br. at 1).

*States v. Velez-Pena*, No. 23-0587, 2025 WL 1029821, at *1 (D.N.J. Apr. 7, 2025) (quoting *Dillon v. United States*, 560 U.S. 817, 824 (2010)).  One of those circumstances is under the First Step Act, which "empowers criminal defendants to request compassionate release for 'extraordinary and compelling reasons.'"  *United States v. Raia*, 954 F.3d 594, 595 (3d Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)).  Section 3582(c)(1)(A)(i) is commonly referred to as the "compassionate release statute" and "allows a sentencing court to reduce the sentence of a prisoner if 'extraordinary and compelling reasons warrant such a reduction' and the reduction is consistent with both the [United States Sentencing] Commission's policy statements and the sentencing factors set forth in 18 U.S.C. § 3553(a)."  *United States v. Rutherford*, 120 F.4th 360, 364 (3d Cir. 2024) (footnote omitted); *see also United States v. Castillo*, No. 12-0230, 2024 WL 453608, at *3 (E.D. Pa. Feb. 5, 2024) ("Only if a defendant's circumstances qualify as 'extraordinary and compelling' will the court look to Section 3553(a) factors to determine whether, at the court's discretion, a sentence reduction is warranted." (citing 18 U.S.C. § 3582(c)(1)(A))).

"Congress did not define the phrase 'extraordinary and compelling reasons' in the compassionate release statute."  *Rutherford*, 120 F.4th at 365.  Rather, "it instructed the Commission to define it."  *Id.*; *see also United States v. Alexander*, No. 19-0032, 2020 WL 2507778, at *3 (D.N.J. May 15, 2020).  The United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") policy statement at § 1B1.13 provides that upon motion of a defendant pursuant to § 3582(c)(1)(A), "the court may reduce a term of imprisonment . . . if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that [] extraordinary and compelling reasons warrant the reduction[,]" that "the defendant is not a danger to the safety of any other person or to the community," and that "the reduction is consistent with this policy statement."  U.S. SENT'G GUIDELINES MANUAL § 1B1.13(a) (U.S. SENT'G COMM'N

2024). According to the Guidelines, a defendant has an "extraordinary and compelling reason" to warrant reduction based on the following circumstances or a combination thereof: (i) "Medical Circumstances of the Defendant"; (ii) "Age of the Defendant"; (iii) "Family Circumstances of the Defendant"; (iv) "Victim of Abuse"; (v) "Other Reasons"; and (vi) "Unusually Long Sentence." *Id.* § 1B1.13(b).

This list of extraordinary and compelling reasons warranting a sentence reduction reflects the Sentencing Commission's recent changes to the requirements and definitions contained in § 3582, as well as the Guidelines' policy statements regarding matters to be considered in evaluating motions for compassionate release.[2]  "Notwithstanding these most recent changes, 'District courts "wield considerable discretion in compassionate-release cases."'" *United States v. McAdams*, No. 09-0737, 2024 WL 863380, at *3 (D.N.J. Feb. 29, 2024) (citing cases).

### III. DISCUSSION

A defendant seeking a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) "bears the burden of satisfying both that he has (1) exhausted remedies before seeking judicial review, and (2) that compelling and extraordinary reasons exist to justify compassionate release." *Velez-Pena*, 2025 WL 1029821, at *2 (quoting *United States v. McNair*, 481 F. Supp. 3d 362, 365 (D.N.J. 2020)).

#### A. Exhaustion

Before proceeding to the merits of a motion for a reduction in sentence, a defendant must meet Section 3582(c)(1)(A)'s exhaustion requirement.  To satisfy this exhaustion requirement,

---

[2] More specifically, Amendment 814, effective November 1, 2023, "expand[ed] and modifie[d] the categories of 'extraordinary and compelling reasons' that may warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A), as follows: (1) additional 'Medical Circumstances' subcategories; (2) modified Family Circumstances category; (3) new 'Victim of Abuse' category; (4) modified 'Other Reasons' category; and (5) new 'Unusually Long Sentence' category." *Castillo*, 2024 WL 453608, at *3 (citing U.S.S.G. § 1B1.13(b) (Nov. 1, 2023)).

defendants must, before moving for compassionate release, first ask the BOP to do so on their behalf and must give the BOP thirty days to respond. *Raia*, 954 F.3d at 595 (citing 18 U.S.C. § 3582(c)(1)(A)); *see also United States v. Harris*, 973 F.3d 170, 171 (3d Cir. 2020).

Here, there is no dispute that Defendant satisfied § 3582(c)(1)(A)'s exhaustion requirement, as both Defendant and the Government acknowledge that the BOP denied Defendant's request for compassionate release prior to Defendant filing the instant Motion. (*See* Mov. Br. at 1; Opp. Br. at 9). Therefore, the Court finds Defendant has satisfied § 3582(c)(1)(A)'s exhaustion requirement and proceeds to considering the merits of Defendant's Motion.

### B.  Extraordinary and Compelling Reasons

Defendant argues the Court should grant his motion for compassionate release and reduce his sentence to time served for the following extraordinary and compelling reasons: (i) his elderly parents both have serious health issues and need him to take care of them, and he as an only child is the only one who can care for them; (ii) a disproportionate disparity exists between his sentence and those in more recent similar terrorism-related cases—Defendant contends his sentencing range was unfairly skewed upward by the application of the terrorism sentencing enhancement that resulted in an increase of twelve levels for him and a substantially longer sentence than the Guidelines otherwise provided for; (iii) other reasons including his young age (he was only twenty years old) at the time of the offense, the harsh prison conditions during the COVID-19 pandemic, and his rehabilitation while in custody; and (iv) the 18 U.S.C. § 3553(a) factors also support his release. (*See generally* Mov. Br.; Reply Br.).

In opposition, the Government argues Defendant's Motion should be denied for the following four reasons: (i) Defendant waived his right to file the instant Motion; (ii) Defendant's family circumstances are not an "extraordinary and compelling reason" warranting compassionate

release; (iii) Defendant does not show another circumstance or a combination of circumstances that amounts to an "extraordinary and compelling reason" warranting compassionate release; and (iv) the 18 U.S.C. § 3553(a) sentencing factors do not support compassionate release for Defendant. (*See generally* Opp. Br.).

The Court addresses each of Defendant's asserted bases for compassionate release in turn, along with the parties' corresponding arguments. Ultimately, for the reasons set forth below, the Court finds none of the bases in Defendant's Motion warrants granting compassionate release for Defendant at this time.

### i. Family Circumstances

The "Family Circumstances" category applies where there is: (i) "[t]he death or incapacitation of the caregiver of the defendant's minor child" or the defendant's adult child who is "incapable of self-care because of a mental or physical disability or a medical condition"; (ii) "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver"; (iii) "[t]he incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent"; and/or (iv) "[t]he defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member . . . ." U.S.S.G. § 1B1.13(b)(3). The Guidelines do not define "incapacitation," so courts in this district have looked to the BOP's program statement on compassionate release, No. 5050.50, for guidance. *See, e.g.*, *United Sates v. Tobolsky*, No. 21-0303, 2024 WL 323476, at *3 (D.N.J. Jan. 29, 2024); *United States v. Perez*, No. 03-0554, 2025 WL 28235, at *6 (E.D. Pa. Jan. 3, 2025); *United States v. Donald*, No. 21-0041, 2024 WL 4581209, at *4 (D. Del. Oct. 24, 2024). The BOP's Program Statement No.

5050.50 defines "incapacitation" to mean that a person either (i) has "[s]uffered a serious injury, or a debilitating physical illness and the result of the injury or illness is that the [person] is completely disabled, meaning that the [person] cannot carry on any self-care and is totally confined to a bed or chair," or (ii) has "[a] severe cognitive deficit (e.g., Alzheimer's disease or traumatic brain injury that has severely affected the [person's] mental capacity or function), but may not be confined to a bed or chair." U.S. DEP'T OF JUST. FED. BUREAU OF PRISONS, PROGRAM STATEMENT NO. 5050.50 – COMPASSIONATE RELEASE/REDUCTION IN SENTENCE: PROCEDURES FOR IMPLEMENTATION OF 18 U.S.C. §§ 3582 & 4205(G) 10 (Jan. 17, 2019), https://www.bop.gov/policy/progstat/5050_050_EN.pdf.

Here, Defendant asserts both of his elderly parents are ill and need him to support and help care for them because he is an only child and there is no one else who can take care of them. (Mov. Br. at 3; *see also id.* at 9–12; D.E. No. 74-3). Defendant asserts his father is seventy-six years old,[3] suffers from stage three kidney disease, hypertension, and other unspecified medical conditions, and has recently been getting worse; and his mother is sixty-three years old and has endometrial cancer for which she underwent surgery in 2021. (Mov. Br. at 3; Supp. Ltr. at 1; *see also* D.E. No. 74-3). Defendant states his father's medical conditions forced his father to retire in 2016, and as a result, Defendant's mother, who previously worked part-time, has been forced to work full-time but barely makes enough to cover rent and other expenses. (Mov. Br. at 3; D.E. No. 74-3; *see also* Supp. Ltr. at 1). In support of this argument, Defendant attaches a sworn declaration from his mother and two notes from his parent's treating physicians. (*See* D.E. No. 74-3 at 1–3). Defendant also says he is "committed to a law-abiding existence assisting his parents

---

[3] In his moving brief, Defendant asserted his father was seventy-five years old at the time the Motion was filed, but in his supplemental letter Defendant states his father is now seventy-six years old. (*Compare* Mov. Br. at 3, *with* Supp. Ltr. at 1).

upon release." (Mov. Br. at 6).

The Government contends Defendant's family circumstances are not extraordinary and do not warrant immediate compassionate release. (Opp. Br. at 17–25). Among other things, the Government states the two pages submitted by Defendant's parents' treating physicians are dated over one year ago and are not accompanied by any supporting medical documentation. (*Id.* at 18). Further, the Government distinguishes the cases Defendant relies on in his Motion as different from the facts of Defendant's case. (*See id.* at 19–25).

The Court finds Defendant has not met his burden in showing an extraordinary and compelling reason for compassionate release based on his family circumstances. Compassionate release is only available if both of Defendant's parents are incapacitated—e.g., that they suffered a serious injury or a debilitating physical illness rendering them completely disabled or that they have a severe cognitive deficit—and he is the only one who can care for them. Here, Defendant does not state or imply that his parents are incapacitated; rather, he cites to a few out-of-circuit cases where courts have granted compassionate release on other facts where the family member was not completely incapacitated or where another caregiver was at least partially available. (*See* Reply Br. at 3–4 (citations omitted)). These cases are distinguishable from Defendant's facts and are not binding on this Court. Additionally, both of Defendant's parents currently take care of each other, and there is no indication that they cannot continue to do so in the near term. Indeed, Defendant did not submit any supporting medical records for his parents or other evidence showing his parents cannot continue to care for each other at this time. While this Court sympathizes with Defendant's circumstances and his desire to assist in caring for his elderly parents who have health issues, Defendant has not provided sufficient evidence that one or both of his parents are incapacitated, nor that he is the only one who can take care of them. Thus, the Court finds

8

Defendant has not shown his family circumstances constitute an extraordinary and compelling reason warranting compassionate release. *See United States v. Coutinho-Silva*, No. 10-0002, 2025 WL 97623, at *2 (E.D. Pa. Jan. 14, 2025) (citing cases where courts have denied compassionate release based on failure to demonstrate "incapacity" and sole caregiver status).

### ii. Unusually Long Sentence & Other Reasons

The "Unusually Long Sentence" category provides that if a defendant received an unusually long sentence and has served at least ten years of the imprisonment term, "a change in the law . . . may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed," and only "after full consideration of the defendant's individualized circumstances." U.S.S.G. § 1B1.13(b)(6).

The "Other Reasons" category states: "The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)." U.S.S.G. § 1B1.13(b)(5).

Here, the late Judge Debevoise sentenced Defendant to twenty-two years of imprisonment after granting an eight-year variance from the recommended Guidelines range of thirty years-to-life imprisonment. (*See* D.E. Nos. 59, 61 & 71). Defendant has not shown that this sentence is unusually long for the charge to which he pled guilty, particularly in light of the eight-year variance he received. Defendant has also not sufficiently shown how his sentence and/or the application of the terrorism sentencing enhancement are "similar in gravity" to the other four extraordinary and compelling circumstances that have long justified compassionate release. *See* U.S.S.G.

§ 1B1.13(b)(1)–(4).

Further, to the extent Defendant is challenging the application of the terrorism sentencing enhancement in his case, which Defendant claims has resulted in a sentencing disparity and/or sentencing disproportionality as compared with more recent sentences that have been issued in other similar terrorism-related cases, Defendant waived the right to bring such a challenge based on the appellate waiver in his plea agreement. (*See* D.E. Nos. 35 & 45). "Waivers in plea agreements are neither new nor unusual, and [courts] have long enforced their terms." *United States v. Damon*, 933 F.3d 269, 272 (3d Cir. 2019). The Third Circuit has recognized that "a defendant should not be permitted 'to get the benefits of [his] plea bargain, while evading the costs[.]'" *United States v. Williams*, 510 F.3d 416, 422 (3d Cir. 2007) (first alteration in original) (quoting *United States v. Bernard*, 373 F.3d 339, 345 (3d. Cir. 2004)). The nonenforcement of a plea agreement "would have a corrosive effect on the plea agreement process." *Id.* Here, Defendant "voluntarily waive[d] the right to file any appeal, any collateral attack, or any other writ or motion, including but not limited to an appeal under 18 U.S.C. § 3742 or a motion under 28 U.S.C. § 2255, which challenges the sentence imposed by the sentencing court if the Court sentences [D]efendant to a term of imprisonment of thirty (30) years or less." (D.E. No. 35 at 8; *see also id.* at 3 (stating the Government and Defendant "waive certain rights to file an appeal, collateral attack, writ or motion after sentencing, including but not limited to an appeal under 18 U.S.C. § 3742 or a motion under 28 U.S.C. § 2255.")).

Defendant further agreed in the plea agreement that regardless of the imprisonment term he received, he would "not in any post-sentence motion, appeal, or collateral proceeding allege that the sentencing court erred in failing to find a substantive or procedural defect in the adoption or amendment of either U.S.S.G. § 2A1.5 or U.S.S.G. § 3A1.4" [the terrorism sentencing

enhancement] and that "if the sentencing court accept[ed] a stipulation, both parties waive the right to file an appeal, collateral attack, writ, or motion claiming that the sentencing court erred in doing so." (*Id.* at 8–9; *see also id.* at 7 ("The parties agree that the offense involved or was intended to promote a federal crime of terrorism. Therefore, the parties agree that U.S.S.G. § 3A1.4 [the terrorism sentencing enhancement] applies to the instant offense.")). Indeed, Defendant does not contend that this waiver was not knowing or voluntary, that enforcing this waiver would result in a miscarriage of justice, nor that his challenge to Judge Debevoise's calculation of the Guidelines falls under one of the three waiver exceptions. *See United States v. Molina*, 373 F. App'x 211, 212 (3d Cir. 2010) (enforcing appellate waiver for defendant challenging the district court's application of a two-point sentencing enhancement for obstruction of justice where the defendant "[did] not contend that the waiver was not knowing and voluntary, that enforcing the waiver would result in a miscarriage of justice, or that his challenge to the [d]istrict [c]ourt's calculation of the guidelines falls under one of the three exceptions to the waiver"); *United States v. Davis*, 271 F. App'x 179, 181 (3d Cir. 2008) (stating that because a defendant's plea agreement contained an appellate waiver, the Third Circuit could only review the merits of the defendant's claim "if his plea was not knowing and voluntary, or if enforcing the waiver would work a miscarriage of justice" (citation omitted)); *see also United States v. Shore*, No. 07-0066, 2023 WL 7285144, at *2 (E.D. Pa. Nov. 2, 2023) (noting that sentencing disparities "alone cannot be a basis to grant [defendant's] compassionate release motion"); *United States v. Harris*, No. 97-0399, 2020 WL 7861325, at *12 (E.D. Pa. Dec. 31, 2020) (stating "the fifteen-year sentence disparity created by the amendment to section 924(c) is a relevant consideration, but not sufficient on its own to warrant a sentence reduction"). As the Government notes, "unlike a [d]efendant who was unaware of the enhancement, or argued against its legality or applicability, Defendant agreed that the

11

enhancement applied and knew how it would affect his sentence." (Opp. Br. at 27).

Thus, the Court finds that Defendant in his plea agreement waived the right to challenge the application of the terrorism sentencing enhancement, and even if he had not, Defendant has not shown an unusually long sentence or other reason based on the application of the terrorism sentencing enhancement that constitutes an extraordinary and compelling reason warranting his immediate compassionate release.

### iii. Other Reasons & Rehabilitation

As noted above, the "Other Reasons" category refers to "any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)." U.S.S.G. § 1B1.13(b)(5). Additionally, under 28 U.S.C. § 994(t), while "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason," a defendant's rehabilitation "while serving [his] sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." *Id.* § 1B1.13(d).

Defendant states that in addition to family circumstances and the sentence disparity based on the terrorism sentencing enhancement, compassionate release is also warranted for the additional reasons that he was young (only twenty years old) at the time of his arrest, the harsh prison conditions he had to endure during the COVID-19 pandemic, and that he "has been rehabilitated." (Mov. Br. at 18). With respect to rehabilitation, Defendant states he has suffered from long-standing mental health issues but says he has matured and improved in prison, and that he has learned how to deal with his mental health challenges and has shown he can avoid violent outbursts. (*Id.* at 4 & 7–8). In particular, Defendant states (i) since January 2023, he has been at

a "Care 1" status for mental health, i.e., "a lack of serious issues"; (ii) in November 2023, he completed an anger management class; (iii) he has completed more than thirty programs over the years and "was scored at the Low security level in 2023"; (iv) in January 2024, he received "exemplary" below-zero scores—namely, a General Score of -9 and a Violent Score of -3—on a Pattern Risk Assessment for which minimum security is considered 8 General points or less and 6 Violent points or less; (v) in April 2024, he completed a 10-week Traumatic Stress and Resilience Resolve workshop; and (vi) his BOP disciplinary history has greatly improved over the years— specifically, every year between 2011 and 2015, he had several violations, but he has had far fewer since then and has had no disciplinary violations since November 2022.[4] (*Id.* at 7–8; D.E. No. 74-4).

The Government concedes Defendant has had fewer disciplinary actions in recent years but argues Defendant's case is very different from other cases such as one where the defendant had no disciplinary issues at all. (Opp. Br. at 31). The Government also contends that Defendant fails to show how his actions in prison demonstrate true rehabilitation as completing an anger management class and other similar classes is not extraordinary, and Defendant also fails to renounce his prior beliefs and intentions. (*Id.* at 31–32). Additionally, the Government states Defendant failed to provide any evidence about his conditions while incarcerated and notes that the conditions during the COVID-19 pandemic affected all incarcerated individuals, not just him. (*Id.* at 32).

The Court finds Defendant has not shown "Other Reasons" sufficient to warrant his immediate compassionate release. Defendant's young age at the time of arrest and the difficult conditions during the COVID-19 pandemic are not sufficient reasons to warrant compassionate

---

[4]  Additionally, Defendant notes that all of his most recent violations were minor, including things like making insolent comments and refusing a work assignment once. (Mov. Br. at 8 & n.1).

13

release. Additionally, Defendant has not provided any evidence about the conditions he had to endure during the COVID-19 pandemic, which affected all incarcerated individuals. Further, while the Court commends and is encouraged by Defendant's recent improvement and decreased BOP disciplinary violations, as well as his completion of the Traumatic Stress and Resilience Resolve workshop and other programs over the years, the Court cannot ignore Defendant's somewhat lengthy BOP disciplinary history. Moreover, even if the Court were to find that Defendant was rehabilitated, rehabilitation is not, by itself, an extraordinary and compelling reason warranting compassionate release.

In sum, the Court finds that Defendant's various asserted bases for compassionate release do not, either individually or combined, constitute extraordinary and compelling reasons warranting immediate compassionate release under § 3582(c)(1)(A)(i).

C.   Section 3553(a) Factors[5]

Even if the Court were to find that Defendant's reasons for compassionate release were extraordinary and compelling, Defendant's Motion would still not succeed based on consideration of the applicable § 3553(a) factors. Section 3553(a) directs the Court to impose a sentence that is sufficient, but not greater than necessary, to further the purposes of sentencing, *i.e.*, the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; afford adequate deterrence; protect the public; provide restitution to any

---

[5] The factors the Court considers under 18 U.S.C. § 3553(a) are: (i) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (ii) "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; (iii) the need for the sentence imposed "to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"; (iv) "the kinds of sentences available"; (v) "the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant" as set forth in the United States Sentencing Guidelines; (vi) pertinent policy statements issued by the United States Sentencing Commission; (vii) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"; and (viii) "the need to provide restitution to any victims of the offense." 18 U.S.C. §§ 3553(a)(1)–(7).

victims; and "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. §§ 3553(a)(1)–(7). Additionally, the Court must consider, *inter alia*, the nature and circumstances of the offense and the defendant's history and characteristics. *Id.* § 3553(a)(1).

Defendant argues that consideration of the applicable § 3553(a) factors also warrants a reduction of his sentence to time served. (Mov. Br. at 21–23). In particular, Defendant argues his young age and lack of criminal history are mitigating factors against the serious offense with which he was charged and to which he pled guilty. (*Id.* at 21). He also states he "is sorry that he ever was interested in joining Al Shaba[a]b or any similar group" and that "[h]e has matured significantly over the years, has shown great improvement in his disciplinary history, and has largely gotten a handle on the issues which led him to provoke people and act in an anti-social manner." (*Id.*; *see also* Reply Br. at 1–2). Defendant also contends there is essentially no recidivism for defendants convicted of terrorism-related charges sentenced to more than five years' imprisonment. (Mov. Br. at 22). Additionally, Defendant states he does not pose a risk to anyone and will be on supervised release and can receive any mental health treatment if needed. (*Id.*).

The Government argues that even if Defendant presented a basis for consideration of compassionate release, his Motion should still be denied based on the applicable § 3553(a) factors—namely, the nature and circumstances of the charge—conspiracy to murder individuals outside the United States, which went beyond mere agreement; protecting the public; and adequate deterrence. (Opp. Br. at 32–34). The Government also notes that "[w]hile Defendant relies on numerous cases with shorter sentences, he omits perhaps the most important – that of Almonte,

15

his [co-]conspirator."[6] (*Id.* at 34). The Government states that although Defendant and Almonte were both charged with the same criminal violation, "Judge Debevoise found that an analysis of 3553(a) factors warranted a lengthier sentence for Defendant" and thus, the Court "should not now grant Defendant's motion and create a disparity." (*Id.*).

The Court agrees with the Government that the applicable § 3553(a) factors weigh against compassionate release in Defendant's case. Here, Defendant was charged with, and pled guilty, to conspiracy within the United States to murder individuals outside the United States, in violation of 18 U.S.C. § 956(a)(1). (*See* D.E. Nos. 31 & 33–35). This is a serious crime, which outweighs Defendant's asserted mitigating factors. The general deterrence and public safety factors also weigh against compassionate release here. As noted above, while the Court commends Defendant's recent improvement and decreased BOP disciplinary violations, as well as his completion of the Traumatic Stress and Resilience Resolve workshop and other programs over the years, the Court cannot ignore Defendant's fairly lengthy BOP disciplinary history. (*See* Mov. Br. at 7–8; D.E. No. 74-4; Opp. Br. at 7–9). Additionally, while Defendant apologizes for ever agreeing to join a terrorist organization and has told defense counsel "that he in no way agrees with the beliefs expressed" by any such organization (*see* Reply Br. at 1–2; D.E. No. 74-3 at 4), he has not specifically renounced any of his former beliefs, nor does he state that he does not intend to join any such group in the future. Even accepting that Defendant is rehabilitated, and that he no longer holds his prior beliefs and does not intend to join any terrorist organization in the future, the Court is not convinced that Defendant poses no threat to public safety. Therefore, the Court

---

[6] The Government notes that without addressing every single of the dozens of cases Defendant cites in support of his position that compassionate release is warranted here, it submits that: (i) "the overwhelming majority of the cases were convictions for material support—not Defendant's offense"; (ii) one "murder conspiracy case . . . resulted in a 300 month sentence and other cases [] appear to have a similar charge [that] resulted in longer sentences"; and (iii) the defendants in some of the material support cases Defendant cited also received similar sentences to Defendant. (Opp. Br. at 30 n.6).

finds the § 3553(a) factors weigh against granting compassionate release for Defendant.

### D. Waiver

The Government also argues the Court should dismiss Defendant's Motion because Defendant waived the right to bring the instant Motion. (Opp. Br. at 6 & 12–17). In reply, Defendant asserts he did not waive the right to bring this Motion and could not have knowingly waived such a right at the time of his plea "given that the First Step Act allowing for this was not even in effect at the time of [his] plea." (Reply Br. at 2–3).

Here, because the Court denies Defendant's Motion on other grounds, as explained above, the Court need not reach the issue of wavier with respect to Defendant's right to bring this Motion.

### IV. CONCLUSION

For the foregoing reasons, Defendant's Motion is **DENIED** *without prejudice*. An appropriate Order follows.

Dated: June 4, 2025                              *s/ Esther Salas*
                                                 **Esther Salas, U.S.D.J.**